Our next case is No. 24, 1977, Shopify, Inc. v. Express Mobile, Inc. Okay, Mr. Lampkin. Good morning, and may it please the Court. I'd like to begin with the post-trial decision overturning the infringement verdict on the 755 patent, with respect to the user interface object limitation in particular, before turning to summary judgment on the 395 patent family and the runtime limitation at issue there. This ground would apply to the method claims as well, right? I'm sorry? This ground would apply to the method claims as well. Yes, and we would address the method claims as well, although the district court had an alternative holding that method claims are whether they're in practice. But the same issue applies to the method claims. No, I – yes, it would. In terms of whether or not there is a user interface object that both receives the input from the user, sends it up to the web service, receives the result from the web service, and then displays that as an output back to the user. And that issue applies to all the asserted claims? All the asserted claims in the 755 patent. That's correct. We would have to prevail on that. There's the alternative holding on the method claims also, with respect to whether they're actually practiced. But I was proposing to turn to that later, and starting with the user object limitation. And I think, as I described, there's two things that this thing has to do, that the user object has to – user interface object has to do, which is to send the information up, accept an input, send it up to the web service, and then display the output, the results. Is the big issue here whether the jury heard the infringement theory, that it's the page that is the object, as opposed to, for example, you know, the ad cart. Is that the object? I think that might be the issue that Judge Andrews was focused on.  And so I think there's two different pieces we'd have to look at. One is for the YouTube video service, which is one of the input outputs, one of the user object interfaces. And then there was also the ad to cart. And whether or not we're talking about the page or the ad to cart, those are two different terms for the same thing, frankly, Your Honor. If you return to page 18019, which is volume 2, this is the construction page that you use in Shopify to build what's called your product page. And if you look on the left-hand side, there's all these attributes that you can click about what you want, size, et cetera. And then what you get on the right is your product page, which is actually different from the full page, because if you compare it to the top. But look, you're presenting a lawyer argument as to why this satisfies the claim limitation. But what did your expert say? Where did your expert say that the page was the UI object? So page 18685. 18685? Yeah, 18685, line 2. He's talking about these very images. And he says, well, first this comes up. This is volume 3? Volume 3 now, yes. And he describes this as customizing ad to cart functionality. So this, everything that comes over, what you're customizing is ad to cart. 18685. I'm sorry, which lines, just so that we follow? Line 2. Okay, thank you. And he's talking about this as customizing the ad to cart functionality. He didn't say that the page is the defined UI object. But he's describing, this is the image he's talking about? Does he ever say that? No, he doesn't, right? Well, he describes the ad to cart. And I think the ad to cart amply qualifies, whether we call it as the page as the lawyer described it in closing, or you just call it ad to cart, which is what he called it throughout. Ad to cart, sometimes ad to cart feature. And whether you draw a box around this entire product page, which isn't the entire page that's displayed, or just around the right-hand side, which is the colored rubber bands, that is a user interface object. What the other side's view was, was that if you press the ad to cart button was one object, and then the pop-up that you get is a separate object. But our expert was very clear. So he never explicitly says that the page is the UI object? I don't, I think he equates the page with the ad to cart, but I don't think, and on page 18.065, or 18.685, when he talks about this image as customizing ad to cart functionality, but I don't think he ever says the page is. It doesn't matter, because we're looking at sufficient evidence. Maybe it does matter. We're looking at sufficient evidence. And could the jury understand that the ad to cart feature, ad to cart, not the ad to cart button, not the result that pops up, is the user interface object? I have a question for you, which is, you know, the question here that is provided with this answer is, so once the products have been identified by the merchant, what else can you do? And then the answer is, next is customizing the ad to cart functionality. I mean, it's not immediately clear that this is a mapping of the accused product to a particular claim limitation, right? It's just, so how were they, how is the jury to know that? Well, there are two things that were very important that show that this is, when he's talking about ad to cart, not just one button or another ad to cart. One, as he goes through, he's actually very careful to repeatedly say ad to cart, not ad to cart button, the ad to cart functionality. And if the court were to turn to, in particular, I think it is page, I'm going to have it tagged right here, 18732. And this is where he's talking about the input and output. And if you look at the very bottom, 18732, line 25, he says, you've got the output value, which is seven. And then the ad to cart has been updated so that there's now seven values. If you're to turn to page 33, we have an image there, which is actually Shopify's image, so I'm not in love with it, but it's adequate for this. You can look and you can see that the ad to, the seven update is in the upper right-hand corner, and the input is right in the middle there. So he's saying that these two pieces, the output, number seven, and the input are both part of ad to cart. The ad to cart has been updated, so there's now seven values. He's not saying, oh, one button is the user object and another button is the user object. And it's even clearer still when he talks about the alternative, which is the video component, because he testifies, again, that he's asked, does Shopify's YouTube web service, not a button to start video, not the video itself, receive an input symbolic name in connection with the user input? Yes, it does. When you click on the play button, the code supports reading the input. That's at 818716. So the YouTube video interface is receiving the input, and what does it do? It gives an output in the form of the video. And if the court were to turn to the very last page of that volume three, you can actually see a picture of what this user object interface looks like. And this jury has experience using the internet, they have experience with phones, and they look at this and they can tell, this is an object. The whole thing is something you interface with. Usually the jury's looking to the expert to tell them sort of clearly what the theory is. And the problem is your expert didn't do that. I think the jury, the question is for sufficiency of the evidence is what the jury could understand the expert to be saying. And when you have a user interface object that has to have two features, receive an input, send it to the web service. Second feature, take the output from the web service and display it. And the expert says, this is what the object, this is what the video interface is doing. Or when he says, this is what the add to cart is doing, it's pretty clear that he's saying that's the interface. But he actually does a little bit more than that, Judge Dyke. The claim also requires the UI object to be associated with a symbolic name. And this comes up earlier in the discussion, but that's on appendix 413, column 37, lines 26 to 27. So you have to have a UI object with a symbolic name. And the expert testified earlier in that on 18708 that you need that, or 1875 he says that, UI object, symbolic name. And what does he identify as having a symbolic name? Line 20 on 18708, there is the symbolic name for video. So he's identifying the video component as having a symbolic name. On lines 12 to 13, same page, he says the add to cart has symbolic names that are now linked up. So he's identifying your UI object has to have a symbolic name. And what is he identifying as having symbolic names? The video component and the add to cart component. Not particular buttons, but those components as a whole. And it's especially important because... Were these specific pages identified to Judge Andrews?  I don't know if those specific pages were identified. But if you read the transcript, I mean, the judge identifies all of it and says, oh, you identified the object as it, and the jury heard this. But look at the actual evidence the judge is citing in the opinion, always saying the add to cart or sometimes add to cart functionality, or sometimes add to cart component, but never does our expert say the add to cart button is itself the UI object, or the output is the add to cart object. Quite the opposite. When he's discussing it, and here's the page 33 of our brief, and he discusses it, that picture on page 33 of our brief, he says the add to cart has been updated. You have the seven, and that's the pop-up. And that's consistent with the specification, which describes sort of what's called a launch bar as an object, and then says the launch bar can have a pop-up. It says that the object can have a pop-up. I see I'm almost into my rebuttal time, but I wanted to point out one last thing. Going back to this page 18109, one of the reasons the jury would understand this to be a single object, not multiple objects, is how it's created. You set the attributes on the left-hand side, and that whole thing comes over as a widget, one thing. So in the creation, it's one thing. In the interaction, if you're going to buy something, you can't buy something without the pop-up, and you can't have the pop-up without buying something. So for the interface, for the individual using it, it's a unitary whole. Same thing with the video. You want to play a video? You're going to have to interface with one piece of the picture, which is the play button, and you can't have your video without the play button. Conversely, the play button doesn't do anything without the video. This is a unitary thing the jury is going to understand as a single, unified user interface object. It's what the user interface is. I want to ask you a legal question. Go ahead. My legal question is, in our review of JMOL, is it okay for us to look beyond the evidence that was presented to the district court in responding to a motion for JMOL? So if there's a waiver where the district court is not fairly apprised of what the evidence is and would not understand it, this court would not sandbag the district court and say, you know, sorry, we found something in the record which is different. But all of this, what was identified as the feature, the add to cart, and the pages that I'm citing, these are things that the district court had and was well aware of that we were not saying that it's individual buttons. These are things where our expert is very clear. Add to cart and video. And I will have a more particular answer with respect to where you can find it in our opposition to the JMOL motion when I get to rebuttal. Claim one of the 397 patent. That's been canceled, correct? I'm sorry. Claim one of the 397 patent? The summary judgment ruling on that. That's been canceled? I don't believe claim one of the 397 has been canceled. The claim, there's one claim of the 755 that has been, it's that issue in the prior one. It has, okay, I'm sorry. It has been, that has been canceled. But that would not have, obviously, a collateral or estoppel effect in the district court. Right. If I could reserve the remainder of my time. So I have a question, which is, was this product page theory argued to the jury in closing argument? Yes, certainly in closing argument. There are two places where counsel made it very clear that he was arguing. Where is that? Let's find that. Okay. Page 19,438. Dr. Almaroth testified that the web. Wait, wait. What page? Oh, I'm sorry. 19,438, line 22. That's not the case. First, he's talking about how Dr. Schmand, which is Shopify's expert. What line? Line 22. 22? Yes. And right above that, he's explained that Dr. Schmand, Shopify's expert, has said that the add to cart button or the play button, this is a separate UI object and the output is a separate UI object. And he says, response, but that's not the case. Dr. Almaroth testified that the web component itself is the UI object and that the UI object does receive inputs and does have outputs for the display. So, again, we've addressed all of that. And he also goes on to say that Shopify is sort of chopping up the individual UI object into little tiny pieces, but that's not how the interface works. Is this the only place or is there another place? There's one other place, and that would be where he says, accuses them of chopping it up into lots of tiny little pieces, and that would be 494. 19,494, I guess. I think that's quoted in our brief in a block quote, and it says, this is another example of Shopify, line two, I apologize. This is another example of Shopify trying to draw little distinctions, little boxes that are narrower than what the claims require and what Express Mobile has said. The UI object is this display. It's this thing around this and includes both the input and output. And the patent describes this. You define a UI object and it can have other UI objects within it. And he goes on from there. This is admitted, right? I mean, I don't think this is a point of contention. Even the red brief admits this, right? I'm sorry. I thought that if you look at page 35 of the red brief, I think that they admit that this argument was made in closing. Their position is that the evidence just hadn't been presented to the jury. Right. I think that their argument is there's no evidence to support it. I think that's right. The argument's made. And the evidence is there because, one, the jury can look at it themselves. Two, it comes from one place as an object. And three, our expert identified the add-to-cart or the video YouTube interface or the video YouTube service, the entirety of that service, as the web component that is the user interface object. He identified the entirety of it, not little components as the user interface object. Okay. Thank you. I think I have about 17 seconds. We'll give you two minutes for rebuttal. Thank you so much. Mr. Saunders.  So on the defined UI object, I think as the colloquy showed, we don't have testimony from the expert at trial saying, I am identifying the product page here as the defined UI object. Now, it's with good reason that you weren't seeing that testimony, as we said in our brief, page 5147 of the appendix through 5148. That's his expert report. I can't recite it in open court, but you can see it very much is a granular theory of what the objects are in terms of, you know, the text field for quantity. What part of expert reports do you mark confidential? I don't understand that. We're not the ones who mark that. But just you can see for yourself, it's a granular theory on this. They come to trial. These are long and complicated claims. The defined UI object runs through multiple limitations. And in connection with that, you know, it has to be the. What page is the expert report on? The expert report is 5147, 5148. Volume 2? Volume 2 of the appendix. 5147. And I do think it is worth just pausing here so we have all on the same page going into trial. You can see right at the top of 5147. In my volume, by the way, this isn't necessarily marked as being confidential because it's not highlighted in here. Am I confused about that? It's not highlighted. Okay, well then, you see the discussion of the text boxes, buttons, multimedia content, these UI objects. And then if you look at paragraph 460, in talking about the Add to Cart Web Component, it's the discussion of the Add to Cart Web Component includes various UI objects, such as the quantity text field and the Add, a.k.a. Add to Cart button. So it's looking button by button for the UI object. The testimony at trial doesn't say, oh, now we have a new theory. It's the entire page. Is there anything? I didn't see anything in the testimony that I reviewed that specifically referred to the text field or a button as being clear that that's the UI object. But do you think there is testimony that's clear as to what they're pointing to for the UI object? Right. I think it's difficult because with the color coding of the limitations, we end up with Judge Andrews saying, yeah, there's not the usual one-to-one correspondence. So I think there's a lot of— So it's like this shows that this meets the green limitations or the gold limitations. Right. You know, some things we do have is you have to, for the other limitations, we have to associate the selected symbolic name with the defined UI object. You'll see them talking about the symbolic names in the plural. The application has to include the selected name of the defined UI object. At 18714, the experts are talking about the different symbolic names that go into that. So that only makes sense as a mapping. If you have different symbolic names for that same page, but you're not talking about the symbolic name for the defined UI object of the whole page, that's a mapping that's going on to the individual outlines. And, you know, it is in a review, but Judge Andrews sat through the entire trial, reviewed the record, and found in granting JMAL that there wasn't the expert testimony on this issue. So it was an appropriate grant of JMAL. And this is not a circumstance, you know, some of the pleas that are made in the brief in terms of, oh, well, the jury could just be looking at the screenshots. You know, this was something where Judge Andrews finds this isn't within the ordinary knowledge of the jurors. Their own inventor and corporate representative says, quote, it will be a challenge for anybody to really understand the patents unless they listen carefully to the experts. And at every step of the presentation on these claims, they have to go to the source note. That doesn't, I mean, that's not going to be something that we're going to say, oh, the expert said that it's hard to understand, so therefore, I mean, I don't know. So on page A18714, you're focusing on the fact that it says the application has to have a symbolic name. And if you look at the demonstrative that was being referred to, what's being referred to there is text buttons and different things like that, not the entire page. Is that what I understand?  I'm saying, again, it's very unclear testimony. But the fact that we're talking about those different symbolic names in the plural, when the claims are, you know, the symbolic name for the defined object, I think is a clear indication, as clear an indication as you can get from the record, that the mapping is onto these individual objects. And so we end up having an input going into one object and then the output in a different object. And the claim requires it to be in a single defined UI object. I think it's straightforward in that we didn't get to the other issues. I'm happy to address anything else, questions the court would have on the other issues. Just for road mapping, the defined UI object disposes of all of the claims in those three patents. And so there isn't a need to get into the separate ruling on the method claim or the new trial ruling on that. And then for the other patents on summary judgment, the downloaded or created ruling, that also resolves all of the claims. And so the most straightforward path in this appeal is if you affirm the grant of JML and affirm the summary judgment ruling on downloaded or created, then all the other issues in the appeal are rooted. Can I just ask you the legal question I asked, which is, even though our review is de novo, what do we do in a scenario where the evidence identified to us on appeal is more expansive and inclusive than the evidence that was provided in the opposition to the JML before the district court? Yeah, I mean, I agree. In fairness to the district court, you wouldn't consider that. And the case we cited for this in our brief is the Rembrandt case. And the pin cipher, that would be 725 F3rd at 1383, where on appeal the Rembrandt wasn't allowed to rely on evidence that hadn't pointed out in its opposition to JML. That's only a problem about the method claim argument, is that right? Yeah, we raised that because on method claim they've raised this exhibit 1032 that wasn't argued at all to the district court. And so we were pointing to the Rembrandt case in connection with that. Okay, thank you. Mr. Lampley, you have two minutes. I'd like to begin. If you're looking for the evidence that was cited in response to the JML, that's at page 19,569, and it cites page 339 of the transcript, which corresponds to 18715, and page 291 of the transcript. So those materials were specifically brought before the district court, and they talk about things such as, on 18715, he's talking about the YouTube web service. I don't think there's a contention that the non-method claims weren't properly argued to the district court on the JML. Pardon? I don't think they're arguing that there was a failure to argue the evidence in the non-method claims. I think he's responding to a question I asked, but thank you. Yes, I think that was with respect to that question. With respect to the method claims, I think we made it very clear that there was evidence of this use, and, in fact, we cited to the fact that their own witnesses testify that everybody uses the Add to Cart because this is an e-commerce website and it's absolutely critical. So come back here to the expert report that Mr. Saunders pointed to. It seems to me that in the expert report he's not saying that the page is the UI object. Quite the opposite. If I could ask the court to turn to page 5147, paragraph 459. Which volume? This is in volume 2. And this is with respect to the YouTube video service in particular. The second line of paragraph 459. Wait, wait, wait. 5147, which paragraph? It's paragraph 459. Yeah. And it says, The below are exemplary screenshots of the UI object singular for the YouTube video component and web service. And what do you see below? You see the entire screen together with the play button in the middle. It doesn't say these are multiples. And even if there are instances in which you point to multiples, the patent is clear, and figure 5 makes this clear in the patent, that you can have individual UI objects within a larger UI object. And that's why sometimes, maybe for Add to Cart, for example, you might have a larger UI object but with multiple smaller UI objects within it. The figure 5 and the corresponding discussion on page 406 of the appendix describes that landing strip as an object and then specifies that the object can have other objects within it, and it's including things like pop-ups. So the notion that you are saying, Oh, I have lots of separate different UI objects and therefore insufficient evidence, doesn't work when the patent itself makes clear that you can have one UI object with other UI objects with their own symbolic names within it. Okay, I think we're out of time. Thank you. Thank you so much. I appreciate it. Thank you.